IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | CRIMINAL NO.  18-31 |
| | ) | |
| | ) | CIVIL NO. 20-1107 |
| | ) | |
| vs. | ) | |
| | ) | |
| **AMBROSE J. SAMPLE, II,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Now pending before the court are several pro se, post-conviction motions filed by Defendant Ambrose J. Sample, II ("Sample"):  (1) a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 89); (2) a motion to proceed in forma pauperis ("IFP") (ECF No. 90); (3) two identical motions for appointment of counsel, docketed separately at ECF Nos. 94 and 96; and (4) a motion for bail pending appeal (ECF No. 98).  The government filed responses in opposition to the motions (ECF Nos. 100, 101, 102), Sample filed a memorandum of law (ECF No. 103) and the motions are ripe for disposition.

Factual and Procedural Background

On March 21, 2019, after a nonjury trial, Sample was found guilty of possession of ammunition by a convicted felon on June 17, 2017, in violation of 18 U.S.C. § 922(g)(1), as charged in count 1 of the indictment at Crim. No. 18-31.  Sample was found not guilty on count 2 of the indictment for possession of a firearm.

The factual background is set forth more fully in the court's Findings of Fact and Conclusions of Law (ECF No. 62).  To summarize, the criminal charges arose from an incident on June 17, 2017, in the Northside neighborhood of Pittsburgh, PA.  On that day, Sample and two friends consumed four cases of beer, two big bottles of E&J Peach, and quantities of fireball liquor.  Sample also took Percoset, while aware that it was not to be taken with alcohol.  At the time of the incident, Sample was deeply depressed and a full-blown alcoholic.  The parties stipulated that at the time of the incident, Sample had four prior convictions for crimes punishable by more than one year in prison.

At approximately 9:40 p.m., Sample stepped into the street directly in front of a neighbor's car, which he believed to be speeding and to pose a danger to the safety of children in the neighborhood.  The occupants of the vehicle testified credibly that Sample pulled a firearm out of his waist.  After an exchange of words, the neighbors were able to drive to their home in the next block and hurry their children inside.  Shortly thereafter, Sample reached into his waistband, pulled out a black gun and fired it into the air four or five times, while shouting: "This is what I'm about."  The neighbors called 911.

In the ensuing investigation, officer Bucci briefly interacted with Sample, who denied hearing gunshots.  Bucci saw Sample enter Sample's home at 267 Kennedy Avenue.  Bucci was called away from the scene.  Detective Lippert encountered Sample shortly thereafter on Perrysville Avenue, which is in walking distance from Kennedy Avenue.  Sample was unarmed and immediately informed Lippert that he had prior felony convictions and was not permitted to possess a firearm.  The officer observed that Sample was intoxicated, put Sample in handcuffs and performed a gun residue test on his hands, which was positive.  A witness identified Sample

as the person involved in the shooting incident. The officers did a protective sweep of 267 Kennedy and secured it.

The officers learned that Sample's former girlfriend, Felicia Ford ("Ford"), with whom he previously lived at 267 Kennedy Avenue, had been present during the incident and drove away in a white Hyundai. Ford married another man while Sample was in jail and lived with her husband at 2532 N. Charles Street, also in the Northside neighborhood of Pittsburgh, PA. Officers drove past Ford's home on 2532 N. Charles Street and saw a white Hyundai. The hood was warm, as if the vehicle was recently driven. The officers obtained a search warrant that covered 267 Kennedy, 2532 N. Charles Street, and the Hyundai.

Upon executing the search warrant at 267 Kennedy, Lippert recovered a .380 caliber round sitting in plain view on the mantelpiece above the fireplace in the living room. The officers did not find a firearm in the home at 267 Kennedy. The officers executed the search warrant for 2532 N. Charles Street at 3:00 a.m. They found Ford asleep in an upstairs bedroom and recovered a silver, two-tone semiautomatic 9 mm pistol from under the mattress on which Ford was sleeping.

The court found that Sample possessed a firearm that evening, but held Sample not guilty on count 2 because the government did not prove beyond a reasonable doubt that the firearm recovered from Ford's bed was the same firearm that Sample fired into the air. The government, therefore, could not prove that Sample possessed a firearm that traveled in interstate commerce.

The court found Sample guilty on count 1, for unlawfully possessing ammunition. The court rejected defendant's argument that the government's expert failed to confirm that the ammunition was functional and explained that the statutory definition does not require that the ammunition be operable, only that it be "designed" for use in a firearm. The court determined

that Sample constructively possessed the round of .380 caliber ammunition charged in count 1 because he was the sole occupant of the 267 Kennedy home at the time of the search and for the preceding ten months, and the ammunition was found in plain view on the mantelpiece in his living room inside the home, within Sample's dominion and control.  The prior felony conviction and interstate commerce elements were not in dispute.

On July 23, 2019, Sample was sentenced to a term of imprisonment of 55 months, followed by 3 years of supervised release.  Sample filed a direct appeal.  On May 29, 2020, the court of appeals affirmed Sample's conviction and sentence.  Sample did not pursue a petition for certiorari to the United States Supreme Court.

Sample signed his § 2255 motion on July 17, 2020, and it was filed on the docket on July 23, 2020.  The court issued a "Miller notice" (ECF No. 92). On August 19, 2020, Sample confirmed his intent to stand on the § 2255 motion as originally filed (ECF No. 94).

Legal Analysis

    I.       Motion to proceed IFP

There is no applicable filing fee for motions filed pursuant to § 2255. *See* Rules Governing § 2255 Cases, Rule 3 advisory committee's note (1976). Courts consider applications to proceed in forma pauperis when necessary to "allow quicker disposition" of § 2255 motions by enabling the judge to "appoint counsel, order the government to pay witness fees, allow docketing of an appeal, and grant any other rights to which an indigent is entitled in the course of a § 2255 motion...."  *United States v. Nelson*, No. 1:09-CR-00211, 2013 WL 6506747, at *4 (M.D. Pa. Dec. 12, 2013).  Because those actions are not necessary in this case, the motion to proceed in forma pauperis (ECF No. 90) will be denied as moot.

II.  Motions to appoint counsel

Sample asks the court to appoint counsel to assist him with the § 2255 motion.  He explains that there was no memorandum of law filed with his § 2255 motion because his access to the law library was curtailed due to the Covid-19 pandemic (ECF No. 97).  Later, on October 13, 2020, Sample filed a memorandum of law (ECF No. 103), which the court considered.  The government opposes appointment of counsel.

District courts may appoint counsel for financially eligible defendants who pursue habeas relief pursuant to 28 U.S.C. § 2255. *See Tabron v. Grace*, 6 F.3d 147, 154-55 (3d Cir. 1993). Appointment of counsel is not mandatory in habeas cases.  Instead, the court must conclude that the interests of justice require that counsel be appointed. 18 U.S.C. § 3006A(a)(2)(B).

Before appointing counsel, the court must make a threshold finding that the claim has arguable merit in fact and law. *Tabron*, 6 F.3d at 155.  If the motion survives this threshold inquiry, the court considers a number of other factors: (1) the merits of the  claim; (2) the movant's ability to present his case considering his education, literacy, experience, and the restraints placed upon him by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and his ability to pursue such investigation; (5) his capacity to retain counsel on his own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *Id.* at 155-56. The list of factors is not exhaustive and no factor is determinative. *Id.* at 157.

The government contends that Sample failed to satisfy the threshold finding because his claim lacks arguable merit.  Sample is alleging ineffective assistance of counsel for failing to pursue a motion to suppress evidence.  For the reasons set forth more fully below, the court agrees with the government that this claim lacks arguable merit.

A review of the other *Tabron* factors also weighs against appointment of counsel to assist with the § 2255 motion. The second factor, Sample's ability to present his case, is slightly in Sample's favor. The court recognizes the constraints on legal research imposed by his incarceration. On the other hand, Sample has demonstrated the ability to present his case through his articulate, well-researched pro se filings. In particular, Sample's § 2255 motion incorporated by reference (*see* ECF No. 89 at 4) a 16-page pro se suppression motion (ECF No. 43), in which Sample thoroughly articulated his suppression arguments and cited numerous legal authorities.[1] The third and fourth factors, complexity and need for factual investigation, cut against appointment of counsel. Sample is raising straightforward questions of law based on the search warrant and affidavit of probable cause. He made his legal arguments in his pro se suppression motion. No factual investigation is needed. Fifth, from review of the IFP petition, Sample does not have capacity to retain counsel on his own behalf. Sixth, the case does not turn on credibility determinations or expert testimony. After balancing all these factors, the court concludes that the interests of justice do not require that counsel be appointed with respect to the § 2255 motion.[2] The motions at ECF Nos. 94 and 96 will be denied.

III.   Section 2255 motion

The court turns now to the merits of Sample's § 2255 motion. Sample contends that his trial counsel was ineffective for failing to file a motion to suppress the evidence (i.e., the round of ammunition) recovered during the search of 267 Kennedy Avenue. Sample argues that the warrant and affidavit of probable cause did not list the items to be seized and that the term "all

---

[1] Sample filed several pro se motions, which the court denied without prejudice because Sample was represented by counsel of record at the time (ECF No. 45).

[2] On January 21, 2021, the court appointed counsel to assist Sample with an unrelated matter, namely, calculation of his time served in state and federal custody.

ammunition" is too broad; that the search warrant did not incorporate the affidavit of probable cause; and that the affiant lied and omitted relevant facts from the affidavit of probable cause. The § 2255 motion also incorporates by reference the arguments made in the pro se suppression motion at ECF No. 43.

The search warrant and affidavit are attached to the government's response (ECF No. 100-1).  The government concedes that the motion is timely filed.  A § 2255 motion is the proper vehicle in which to allege ineffective assistance of counsel.

A. Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside, or correct the sentence upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.  The Supreme Court reads § 2255 as stating four grounds upon which relief can be granted:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence "is otherwise subject to collateral attack."

CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 625 (4th ed. 2011) (quoting *Hill v. United States*, 368 U.S. 424, 426-27 (1962)).  The statute provides as a remedy for a sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.

"As a collateral challenge, a motion pursuant to [§ 2255] is reviewed much less favorably than a direct appeal of the sentence." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)). "Indeed, relief under § 2255 is available only when 'the claimed error of law was a fundamental defect [that] inherently results in a complete miscarriage of justice, and... present[s] exceptional circumstances where the need for the remedy afforded by the writ...is apparent.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974) (internal quotation marks omitted)).

A district court is required to hold an evidentiary hearing on a § 2255 motion if "the files and records of the case are inconclusive as to whether the movant is entitled to relief." *United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005). "[T]he court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Id.* at 545. The court concludes that an evidentiary hearing is not necessary in this case because, as described below, based upon the file and records in this case Sample is not entitled to relief.

B. Standard for ineffective assistance of counsel claims

To support a claim that counsel's assistance was so defective as to amount to a deprivation of one's Sixth Amendment right to effective assistance of counsel and require reversal of a conviction, a defendant must show two things: (1) counsel's performance was deficient; and (2) counsel's deficient performance caused him prejudice. *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *see Ross v. Dist. Att'y of the Cnty. of Allegheny*, 672 F.3d 198, 210 (3d Cir. 2012). To show deficient performance, defendant must show that counsel made errors so serious that counsel was not

functioning as the counsel guaranteed the defendant by the Sixth Amendment. *Ross*, 672 F.3d at 210.

"With respect to prejudice, a challenger must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A "reasonable probability" is a probability sufficient to undermine confidence in the outcome." *Harrington*, 562 U.S. at 104. It is not enough to show that counsel's errors had "some conceivable effect on the outcome of the proceeding." *Id.* (citing *Strickland*, 466 U.S. at 693). If a court determines that defendant did not suffer prejudice, it need not determine whether counsel's performance was deficient. *Marshall v. Hendricks*, 307 F.3d 36, 87 (3d Cir. 2002) (citing *Strickland*, 466 U.S. at 697)). Courts should generally address the prejudice prong first. *See McAleese v. Mazurkiewicz*, 1 F.3d 159, 170 (3d Cir. 1993).

The focus of Sample's motion is counsel's decision to not re-file a motion to suppress evidence. On the performance prong, the Third Circuit Court of Appeals has "reject[ed] the notion that it is defense counsel's duty to 'make every motion in the book' in the hope that one may succeed." *Islaam v. United States*, No. CV 16-3664, 2019 WL 1375795, at *8 (D.N.J. Mar. 27, 2019) (quoting *United States v. Hines*, 470 F.2d 225, 231 (3d Cir. 1972)). "[E]ffective assistance does not demand that every possible motion be filed, but only those having a solid foundation." *Id.* On the prejudice prong, Sample cannot succeed on an ineffective assistance of counsel claim for failing to file a motion to suppress if such a motion would have failed. *Faison v. Smithfield*, No. CV 20-1654, 2020 WL 5642021, at *1 (3d Cir. July 16, 2020) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 382–83 (1986)). The court will first address the prejudice prong.

C. Analysis of Sample's theories

As noted, in support of his § 2255 motion, Sample incorporated by reference the arguments set forth in his pro se suppression motion at ECF No. 43.  In that motion, Sample presented three theories: (1) the officers lacked independent corroboration to believe a crime was committed; (2) a "*Franks* hearing" was warranted because the affidavit contained false information and omitted other relevant information; and (3) the issuing magistrate lacked probable cause to issue the warrant.  In his § 2255 motion, Sample also argues that the term "all ammunition" in the search warrant is too broad, and that the search warrant did not incorporate the affidavit of probable cause.  The court will address each theory in the context of Sample's arguments about ineffective assistance of counsel.

1.  No corroborating evidence

Sample argued that the "officers' on scene investigation yielded negative results to corroborate any aspect of the allegations being alleged."  (ECF No. 43 at 2).  This argument is conclusively rebutted by the record and on the face of the affidavit of probable cause.

The affidavit of probable cause recounted officer Bucci's discussion with an eyewitness, who stated that the male Bucci had just spoken to "was the individual that was shooting a black handgun."  (ECF No. 100-1). The eyewitness "pointed the male out and stated 'that's him going across the street.'"  *Id.*   The affidavit stated that shortly thereafter, detective Lippert encountered "a male matching the description of the shots fired suspect" (i.e., wearing all white with long dread locks).  *Id.*  The male (i.e., Sample) handed Lippert his ID and the address matched the address given to Bucci by several witnesses.  *Id.*  A witness was driven past the location where Sample was detained and "positively identified Samples [sic] as the male firing shots."  *Id.*  In

sum, the officers had substantial corroborating evidence to establish probable cause that a crime

had been committed and that Sample committed it.

2. <em>Franks</em> hearing

To trigger the right to a *Franks* hearing, a defendant must make a "substantial

preliminary showing" that: (1) a false statement knowingly and intentionally, or with reckless

disregard for the truth, was included by the affiant in the warrant affidavit; and (2) the allegedly

false statement is necessary to the finding of probable cause.  *Franks v. Delaware*, 438 U.S. 154,

155–56 (1978).  The Supreme Court explained:

> To mandate an evidentiary hearing, the challenger's attack must be more than
> conclusory and must be supported by more than a mere desire to cross-examine.
> There must be allegations of deliberate falsehood or of reckless disregard for the
> truth, and those allegations must be accompanied by an offer of proof. They
> should point out specifically the portion of the warrant affidavit that is claimed to
> be false; and they should be accompanied by a statement of supporting reasons.
> Affidavits or sworn or otherwise reliable statements of witnesses should be
> furnished, or their absence satisfactorily explained. Allegations of negligence or
> innocent mistake are insufficient.

*Id.* at 171.  Sample failed to meet either prong of this test.

With respect to the falsity prong, as explained in *United States v. Brown*, 631 F.3d 638 (3d

Cir. 2011), "[a]n assertion is made with reckless disregard when 'viewing all the evidence, the

affiant must have entertained serious doubts as to the truth of his statements or had obvious

reasons to doubt the accuracy of the information he reported.'" *Id.* at 645 (quoting *Wilson v.

Russo*, 212 F.3d 781, 788 (3d Cir. 2000)). The court identified two distinct ways in which

conduct can be found reckless: "either the affiant actually entertained serious doubts; or obvious

reasons existed for him to do so, such that the finder of fact can infer a subjectively reckless state

of mind." *Id.*

Sample argues that the affidavit of probable cause contains a deliberately or recklessly false statement designed to mislead the magistrate to believe that a witness observed Sample walk into 267 Kennedy Avenue after the alleged shooting.  Specifically, Sample points to the following statement:  "I immediately recognized Samples address of [the Residence] as the address given to Officer Bucci by several witnesses.  This is the address that **witness observed the suspect walk into** after firing shots in the street."  (ECF No. 100-1) (emphasis added).

Sample argues that no witness actually reported they saw him walk into the home at 267 Kennedy.  (ECF No. 43 at 4, 7).  Sample is factually incorrect.  The affidavit of probable cause includes the statement: "Officer Bucci observed the unknown black male he was just speaking with [i.e., Sample], cross the road an[d] appeared to go into the house."  (ECF No. 100-1).  The statement that Sample contends is false is actually supported on the face of the affidavit of probable cause.[3]

With respect to the "necessity" prong, the court must consider whether the affidavit's remaining content is sufficient to establish probable cause, if the allegedly false material is set aside.  *Franks*, 438 U.S. at 156.  For alleged omissions, the court considers whether the affidavit, including the omitted facts, continues to establish probable cause. *United States v. Dougherty*, No. CR 19-64-JLS, 2020 WL 3574467, at *5 (E.D. Pa. July 1, 2020) (declining to hold *Franks* hearing where omission was not material) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 470 (3d Cir. 2016) ("Where there are improperly omitted or included facts, we have previously instructed district courts to perform literal, word-by-word reconstructions of challenged affidavits.")).

---

[3] The affidavit also contained a statement from a different witness that:  "he saw the male with the dread locks fire multiple rounds from a black handgun with a silver strip into the air then run to the area of [the Residence] and quickly returned without the black handgun."  *Id.*

Sample points to the following omissions from the affidavit of probable cause: (1) no shell casings were found at the scene and nobody was hit by gunfire; and (2) during the 911 call, the witness described a "long gun," stated that two persons had guns, and stated that they were putting them in the back of a white SUV (ECF No. 43 at 6).  These omissions are not material. Adding the facts to the affidavit does not defeat the existence of probable cause.  To repeat, numerous eyewitnesses identified Sample as the person who fired multiple gunshots into the air. In sum, Sample fell far short of demonstrating a right to a *Franks* hearing.

### 3.  No probable cause for magistrate to issue warrant

Sample argues that the affidavit did not contain a sufficient showing of probable cause to justify the magistrate's decision to issue the search warrant. This court must conduct "a deferential review of the initial probable cause determination made by the magistrate."  *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010).  The Third Circuit Court of Appeals summarized the applicable legal principles in *Stearn*:

> The role of a reviewing court is not to decide probable cause de novo, but to determine whether "the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238, 103 S. Ct. 2317 (citation and quotation omitted). As we explained in *Jones*,
>
>> [O]ur role is not to make our own assessment as to whether probable cause existed. Rather, we are constrained to determine only whether the affidavit provides a sufficient basis for the decision the magistrate judge actually made.
>
> *Jones*, 994 F.2d at 1057. If a substantial basis exists to support the magistrate's probable cause finding, we must uphold that finding even if a "different magistrate judge might have found the affidavit insufficient to support a warrant." *Conley*, 4 F.3d at 1205. Although we do not merely "rubber stamp a magistrate's conclusions," *Whitner*, 219 F.3d at 296 (citation and quotation omitted), we must heed the Supreme Court's direction that "doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Gates*, 462 U.S. at 237 n. 10, 103 S. Ct. 2317 (citation and quotation omitted).
>
> Probable cause is a "fluid concept" that "turn[s] on the assessment of probabilities in particular factual contexts." *Id.* at 232, 103 S.Ct. 2317. When

presented with an application for a search warrant, the magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. 2317. Although every affidavit ideally would contain direct evidence linking the crime with the place to be searched, a magistrate may issue a search warrant even without direct evidence. Probable cause can be, and often is, inferred from "the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence]." *Jones*, 994 F.2d at 1056 (citation and quotation omitted). Because probable cause is a "practical, nontechnical conception," we are concerned with "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Gates*, 462 U.S. at 231, 103 S.Ct. 2317 (citation and quotation omitted).

*Id*. In this case, for the reasons discussed above, there was more than sufficient information to establish probable cause and support the magistrate's decision to issue the warrant.

### 4.   Overbreadth/Lack of particularity

Sample argues that the term "all ammunition" in the search warrant is overbroad and does not state with particularity the items to be seized.    The particularity requirement ensures that search warrants particularly describe the things that are to be seized, and therefore "makes general searches ... impossible." *Middlebrooks v. Clavijo*, No. CV 19-16991, 2020 WL 5088258, at *2 (D.N.J. Aug. 26, 2020) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)).  A warrant will satisfy the particularity requirement even if it describes the items to be seized in inclusive, generic terms, so long as it does not vest officers with unbridled discretion to search and seize whatever they wish. *See United States v. $92,422.57*, 307 F.3d 137, 149 (3d Cir. 2002).

Courts have upheld similar warrants for "all guns" and "all ammunition."  In *United States v. Mitchell*, No. CRIM.A. 04-CR-603-1, 2005 WL 486774, at *2 (E.D. Pa. Mar. 1, 2005) (holding that warrant authorizing police to search for "any and all firearms, ammunition, . . ." satisfied the particularity requirement), the court explained that the warrant limited the officers to searching for firearms and other evidence linking the target to the commission of a certain crime.

In *United States v. Sanders*, 351 F. App'x 137 (7th Cir. 2009), the court held that a particularity challenge would be frivolous, and explained:  "If a felon is forbidden to possess any firearms, then a warrant authorizing seizure of any and all firearms from his house is not vague or overbroad; it tells the executing officers precisely what to search for."  *Id.* at 139.

      The same analysis applies in this case.  The affidavit of probable cause reflected Sample's admission to detective Lippert that he served 14 years in prison for murder.  As a convicted felon, he was prohibited from possessing guns or ammunition.  The search warrant did not vest officers with unbridled discretion to search and seize whatever they wanted; instead, the warrant was limited to weapons, ammunition, and indicia of residency.  The warrant was not overbroad.

5.   Search warrant did not incorporate affidavit

      Sample argues, citing *United States v. Tracey*, 597 F.3d 140 (3d Cir. 2010), that the search warrant should be invalidated because it did not expressly incorporate the affidavit of probable cause.  In *Tracey*, which involved a child abuse investigation, the issue was lack of particularity with respect to what could be searched.  The warrant permitted officers to search for: "Any items, images, or visual depictions representing the **possible exploitation of children** including video tapes or photographs."  *Id.* at 151.  The government conceded that the warrant was overbroad, but argued that the accompanying (but not incorporated) affidavit narrowed the scope of the search.  *Id.*  The court held that "for an affidavit **to cure a warrant's lack of particularity**, the words of incorporation in the warrant must make clear that the section lacking particularity is to be read in conjunction with the attached affidavit."  *Id.* at 149 (emphasis added).

15

This case is different.  While there was no express incorporation of the affidavit of probable cause,[4] the search warrant in this case does not lack particularity.  *See* Section C(4) above.  On its face, the search warrant limits the scope of the search to weapons, ammunition and indicia of residency.  Any failure to incorporate the affidavit, therefore, does not invalidate the search warrant as overbroad.  The court need not reach the government's alternative argument regarding the good faith exception.[5]

### D.  Summary on § 2255 motion

In summary, after examining all the arguments Sample wanted to raise in a suppression motion, the court concludes that they are without merit and would have been denied.  Sample was, therefore, not prejudiced by his counsel's decision to not file a suppression motion.  His claim of ineffective assistance of counsel must fail.  The § 2255 motion (ECF No. 89) will be denied.

Pursuant to 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Because Sample did not meet this standard, a certificate of appealability will not issue.

### IV.    Motion for bail pending appeal

As reflected in a letter to the court on January 10, 2021, Sample is imprisoned at Northeast Ohio Correctional Center.  Sample reported that on August 25, 2020, he was granted re-parole by

---

[4] A review of the documents reflects that the total number of pages was 3 (which necessarily included the affidavit), the magistrate judge's stamp and/or signature was on each page, and the form stated: "WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause. . . ."  The box stating that the probable cause affidavit "MUST be attached," however, is unchecked, and the warrant does not contain express words of incorporation.

[5] The court held in *Tracey* that the "good faith exception" applied because it was reasonable for an officer to believe that the affidavit was properly incorporated.  *Id.* at 152.

Pennsylvania.[6]  Sample filed a motion to be released on bail pending "appeal" (ECF No. 98). The substance of the motion for bail addresses release pending resolution of his § 2255 motion. Because his § 2255 motion will be denied, for the reasons set forth above, his motion for release is moot.   In any event, Sample did not establish the kind of extraordinary circumstances identified in *Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992).  The motion for bond (ECF No. 98) will be denied.

Conclusion

For the reasons discussed above, the court concludes that Sample's motions are without merit:  (1) the motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 89) will be denied and no certificate of merit will issue; (2) the motion to proceed in forma pauperis ("IFP") (ECF No. 90) will be denied as moot; (3) the motions for appointment of counsel (ECF Nos. 94 and 96) will be denied; and (4) the motion for bail pending appeal (ECF No. 98) will be denied.

An appropriate order will be entered.

Dated:  January 22, 2021

BY THE COURT:

/s/ Joy Flowers Conti
Judge Joy Flowers Conti
Senior United States District Judge

---

[6] The court recently appointed counsel to assist Sample in obtaining proper credit for time served in state and federal custody.